IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ALLSTREAM BUSINESS US, LLC, an Oregon limited liability company**, | Case No. 3:20-cv-01970-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CARRIER NETWORK SOLUTIONS, LLC, a South Carolina limited liability company; and ERIC MOSTROM, an individual**, | |
| Defendants. | |

Thomas R. Johnson & Heidee Stoller, Perkins Coie LLP, 1120 N.W. Couch Street, 10th Floor, Portland, OR 97209; Gregory R. Merz & Maria S. de Sam Lazaro, Lathrop GPM LLP, 500 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402. Attorneys for Plaintiff.

**IMMERGUT, District Judge.**

On November 12, 2020, Plaintiff filed this action alleging breach of contract, account stated, unjust enrichment, and violations of the South Carolina Uniform Limited Liability Company Act and Oregon Uniform Fraudulent Transfer Act. ECF 1 at ¶¶ 70–94. Plaintiff also sought to pierce the corporate veil of Defendant Carrier Network Solutions, LLC and hold Defendant Eric Mostrom personally liable. *Id*. at ¶¶ 95–98. The Clerk entered Defendants' default under Federal Rule of Civil Procedure 55(a) on March 12, 2021. ECF 14. Plaintiff now

moves for default judgment under Rule 55(b). ECF 16. No response has been filed. For the following reasons, Plaintiff's Motion is GRANTED.

## LEGAL STANDARDS

Following the Clerk's entry of default under Federal Rule of Civil Procedure 55(a), the general rule is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). The court, however, does not accept as admitted legal conclusions or facts that are not well-pleaded. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

After the entry of a defendant's default, the Clerk is authorized to enter a default judgment if the plaintiff's claim "is for a sum certain or a sum that can be made certain by computation . . . against a defendant who has been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1). A sum is certain when "no doubt remains as to the amount to which a plaintiff is entitled as a result of the defendant's default." *Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 929 (9th Cir. 2004) (citing *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003)).

If the defendant has appeared or if the plaintiff's claim is not for a sum certain, the court may enter a default judgment. *See* Fed. R. Civ. P. 55(b)(2). The court's decision whether to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has identified seven factors to guide a district court's consideration of whether to enter a default judgment ("*Eitel* factors"):

PAGE 2 – OPINION AND ORDER

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action[,] (5) the possibility of
> a dispute concerning material facts[,] (6) whether the default was
> due to excusable neglect, and (7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The "starting point," however, "is the general rule that default judgments are ordinarily disfavored." *Id*. at 1472.

## BACKGROUND

Defendant Carrier Network Solutions, LLC ("CNS") is a South Carolina limited liability company. Its sole member is Defendant Eric Mostrom ("Mostrom"), a resident and citizen of Florida. ECF 1 at ¶ 3. CNS is a "toll reseller." *Id*. at ¶ 8. Toll resellers "provide long distance telecommunications services primarily by reselling the telecommunications services of other carriers." *Id*. Plaintiff Allstream Business US, LLC ("Allstream") is a "telecommunications company that provides a wide range of business communications services across North America." *Id*. at ¶ 6. Plaintiff is a citizen of Delaware and Colorado. *Id*. at ¶ 2.

In November 2018, a sales agent retained by Allstream identified CNS as a customer who could "resell Allstream's long distance telecommunications services to a third party." *Id*. at ¶ 8. Following CNS's submission of a "traffic profile," which represented the "expected volume, duration, and originating and terminating locations of calls," Allstream and CNS entered into a contract in November 2018 ("2018 Contract"). *Id*. at ¶¶ 9–10. The 2018 Contract included provisions governing payment, including that Allstream would bill CNS for its monthly recurring charges ("MRC") on a monthly basis, payment was required within thirty days of each invoice, and CNS was required to dispute any invoice within ninety days. *See id.* at ¶¶ 12–16. The 2018 Contract also provided that in the event of a default by CNS, Allstream could terminate the agreement, *id*. at ¶ 17, and if service was terminated for cause, CNS would pay "an

amount equal to the MRC [ ] for the terminated Service(s) for the balance of the Service Term, plus any additional Charges incurred by Allstream," *id*. at ¶¶ 67–68; ECF 1-1, Ex. A, at § 2.3.

Allstream sent its first invoice to CNS on January 27, 2019. CNS failed to timely pay the $26,911.01 balance. CNS also failed to pay its February and March balances in full or on time. *Id*. at ¶ 19; *see also* ECF 18-1, Ex. 4, at 16–24 (January through April 2019 invoices not paid in full). Additionally, Allstream incurred more than $73,000 in unanticipated costs in CNS's first month of services due to CNS's traffic patterns diverging from those submitted in its traffic profile. ECF 1 at ¶ 20; *see also* ECF 1-2, Ex. B; ECF 18-1, Ex. 2, at 4–11. Allstream notified CNS of this divergence. ECF 1 at ¶ 22.

CNS and Allstream amended the 2018 Contract on April 15, 2019 ("Addendum 1"). Addendum 1 established a monthly minimum volume and payment requirement for CNS and extended the initial service term of the contract to November 18, 2024. *Id*. at ¶¶ 23–25. CNS again failed to pay in full or on time, and by August 2019, owed nearly $1.5 million to Allstream. *Id*. at ¶¶ 27–33; *see also* ECF 18-1, Ex. 4, at 32–33 (August 2019 invoice). On September 20, 2019, the parties again amended the 2018 Contract ("Addendum 2"). ECF 1 at ¶ 35. Addendum 2 retained the same pricing structure as established in Addendum 1, extended the term to May 18, 2025, and provided CNS with a line of credit against which it could incur charges. *Id*. at ¶¶ 36, 38–39. Further, both parties acknowledged that CNS owed Allstream more than $2 million. *Id*. at ¶ 37.

CNS continued to fail to pay on time or in full. *See id*. at ¶¶ 39–55; ECF 18-1, Ex. 4, at 34–42 (September through December 2019 invoices). On December 19, 2019, Allstream suspended CNS's services, ECF 1 at ¶ 56, and on December 23, 2019, Allstream sent a formal notice of monetary breach to CNS, *id*. at ¶ 66; ECF 1-5, Ex. E, at 1–2. On January 21, 2020,

Allstream terminated its agreement with CNS, citing CNS's failure to cure its breach. ECF 1 at ¶ 69; ECF 1-6, Ex. F, at 1.

## DISCUSSION

As a preliminary matter, the Court is satisfied that it has personal jurisdiction over Defendants based on the facts in this record. A district court "has an affirmative duty" to determine whether it has subject matter jurisdiction and personal jurisdiction over the defendant before entering a default judgment. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court "may dismiss an action *sua sponte*" where personal jurisdiction does not exist. *Id*. However, it must first give the plaintiff moving for a default judgment the opportunity to show facts supporting the exercise of personal jurisdiction. *Id.* at 712–13.

Plaintiff has alleged sufficient facts to support the exercise of specific personal jurisdiction in this case. Defendants contracted with and assumed obligations to an Oregon company, Allstream, and their dispute arises out of the parties' contractual business relationship. *Cf. Shedrain Corp. v. Bonvi Sales Corp.*, 132 F. Supp. 2d 1299, 1303 (D. Or. 2001). The 2018 Contract contains a forum selection clause whereby any action "arising out of the Agreement shall be litigated exclusively in courts in the State of Oregon" and governed by Oregon law. ECF 1-1 at §§ 10.2–10.3; *see also Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1206 (9th Cir. 2011) (holding that "a forum selection clause that specifies 'courts of' a state limits jurisdiction to state courts, but specification of 'courts in' a state includes both state and federal courts"). "Personal jurisdiction is proper whenever a party has consented to resolving disputes in a given jurisdiction." *Smith Cookie Co. v. Archway Cookies*, No. CV 03-248-HA, 2003 WL 23960710, at *3 (D. Or. Apr. 25, 2003); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (explaining personal jurisdiction is a "waivable right" and parties may "stipulate in advance to submit their controversies for resolution within a particular jurisdiction"); *Carnival*

PAGE 5 – OPINION AND ORDER

*Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991) (finding "the forum-selection clause to be dispositive" on the question of personal jurisdiction). Moreover, while a choice of law provision alone is insufficient to establish jurisdiction, it supports finding "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Burger King Corp.*, 471 U.S. at 482.

This Court is also satisfied that it has subject matter jurisdiction. Diversity jurisdiction exists in an action between "citizens of different states" when "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). The amount in controversy in this case exceeds $75,000. Diversity jurisdiction "requires 'complete diversity' of citizenship, meaning that 'the citizenship of each plaintiff is diverse from the citizenship of each defendant.'" *Demarest v. HSBC Bank USA, N.A.*, 920 F.3d 1223, 1226 (9th Cir. 2019) (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). For purposes of diversity jurisdiction, a limited liability company is a citizen of each state of which its members are citizens. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Plaintiff Allstream is an Oregon limited liability company, whose sole member is Zayo Group, LLC ("Zayo"). ECF 1 at ¶ 2. Zayo is a Delaware corporation with its principal place of business in Colorado. Therefore, Allstream is a citizen of Delaware and Colorado. *Id*. Defendant CNS is a South Carolina limited liability company, whose sole member is Defendant Eric Mostrom. Mostrom is a resident and citizen of Florida. Therefore, CNS is a Florida citizen. *Id*. at ¶ 3.[1]

---

[1] To the extent Plaintiff has uncovered additional or alternative residences of Mostrom while attempting to serve him, these do not destroy complete diversity, as Plaintiff remains diverse from Defendants. *See* ECF 17-1, Ex. 8 at 18 (noting Mostrom potentially resided in South Carolina); ECF 17-1, Ex. 9 at 22 (listing possible addresses for Mostrom in Florida, Illinois, Minnesota, North Carolina, South Carolina, and Wisconsin).

## A.  Procedural Requirements

Plaintiff has satisfied the requirements of Local Rule 55 and Federal Rule of Civil

Procedure 55. Plaintiff requested, ECF 13, and received, ECF 14, the Clerk's entry of default.

Defendants are neither minors nor incompetent. Defendants have not appeared personally or by a

representative, so they are not entitled to written notice of the application for default judgment.

Fed. R. Civ. P. 55(b); *see also Stephen Wurth Photography, Inc. v. Wetpaint.com, Inc*., No. SA

CV 16-2101-DOC, 2018 WL 5266861, at *2 (C.D. Cal. Oct. 5, 2018) (determining plaintiffs'

"procedural compliance"). Nevertheless, Plaintiff has served Defendants with written notice of

the motion for default judgment. ECF 19.

The relief granted in default judgment is limited to what is demanded in the pleadings.

Fed. R. Civ. P. 54(c). The remedies requested in the instant motion "are not different from and

do not exceed the relief prayed for in the Complaint." *Philip Morris USA Inc. v. Banh*, No. CV

03-4043 GAF (PJWx), 2005 WL 5758392, at *6 (C.D. Cal. Jan. 14, 2005); *see also* ECF 1 at ¶

99; ECF 16 at 14–22.

Finding procedural compliance, the Court now turns to Plaintiff's Motion for Default

Judgment.[2]

## B.  Carrier Network Solutions, LLC

Plaintiff moves this Court for entry of default judgment against CNS pursuant to Rule

55(b)(1) (entry by Clerk), or in the alternative pursuant to Rule 55(b)(2) (entry by Court). ECF

16 at 2.

---

[2] Plaintiff has requested oral arguments on the motion. ECF 16. The Court has determined that oral argument would not help resolve the motion and issues this Opinion and Order based on the briefing. *See* LR 7-1(d).

"'The dispositions of motions for entries of default and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.'" *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)) (alterations in original). Plaintiff originally requested that the Clerk enter default judgment. ECF 13. This Court issued an Order stating it was "not persuaded that the requested default judgment necessarily falls under [Rule] 55(b)(1) and request[ed] that Plaintiff file a motion" under Rule 55(b)(2), as well as supporting evidence not already in the record. ECF 15. Plaintiff now moves this Court, not the Clerk, for default judgment. A court "may" enter default judgment, while the Clerk "must" do so if certain criteria are satisfied. *See S. Coast Lumber Co. v. Blue Lake Power, LLC*, No. 1:15-cv-01651-CL, 2015 WL 13238463, at *1 (D. Or. Dec. 1, 2015), *report and recommendation adopted*, No. 1:15 CV 01651-CL, 2016 WL 8735677 (D. Or. Jan. 22, 2016) (rejecting plaintiff's claim that Rule 55(b)(1)'s mandatory provision applies because "Plaintiff's request is addressed to the Court, [so] the Court will analyze its motion under subsection (2)'s discretionary standard"). Further, there are "discrepancies" between the amount of damages sought in the Complaint, ECF 1, and the initial request to the Clerk under Rule 55(b)(1), ECF 13-1, and the amount sought in the instant motion (ECF 16).[3] "In the Rule 55 context, a claim is not a sum certain unless there is no

---

[3] The Complaint established a total outstanding amount of $4,130,737.41, ECF 1 at ¶ 39, and an early termination fee of $9,740,000, *id.* at ¶ 73. The initial request for an entry of default judgment pursuant to Rule 55(b)(1) sought $13,872,449.41. ECF 13-1 at 1; ECF 13, First de Sam Lazaro Decl., at ¶¶ 9, 33. That amount comprised $4,130,737.41 in outstanding payments, ECF 13 at ¶ 28, $9,740,000 for the early termination fee, *id.* at ¶ 29, $1,310 in costs related to locating and serving Defendants, *id.* at ¶ 30, and $402 in filing fees, *id.* at ¶ 31. Following this Court's Order "request[ing] that Plaintiff file a motion" under Rule 55(b)(2), ECF 15, Plaintiff filed the instant motion, which requests a different sum: $13,717,047.41, ECF 16 at 2. This amount comprises $4,130,737.41 in outstanding payments, *id.* at 16, $9,585,000 for the early termination

doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." *KPS & Assocs.*, 318 F.3d at 19. These uncertainties indicate the sum is not certain. *See id.* at 18–20. This Court, in its discretion, proceeds to analyze Plaintiff's motion under the Rule 55(b)(2) standard.

As explained below, based on an analysis of the *Eitel* factors under Rule 55(b)(2), this Court finds Plaintiff is entitled to default judgment against CNS.

### 1. *Eitel* Factors

On balance, the *Eitel* factors weigh in favor of granting Plaintiff's motion for default judgment against CNS. Each factor is discussed in turn.

#### a. Factor 1: Prejudice to Plaintiff

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Given Defendants' failure to cooperate in this lawsuit and Plaintiff's lack of alternative avenues of recovery, Plaintiff would suffer prejudice if default judgment is not entered. This factor thus weighs in favor of default judgment. *See Garcia v. Pacwest Contracting LLC*, No. 3:12-cv-01930-SI, 2016 WL 526236, at *3 (D. Or. Feb. 9, 2016) (noting lack of "alternative means by which to resolve their present claims" and finding this factor weighed in favor of default judgment).

#### b. Factors 2 and 3: Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors "require that a plaintiff state a claim on which [it] may

---

fee, *id*. at 18–19, and costs of $1,310, *id*. at 19. Plaintiff reduced its early termination fee request by roughly $200,000 and removed the filing fees request.

recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (quotation marks and citation omitted); *see also*

*Curtis v. Illumination Arts, Inc*., 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) ("The second

and third *Eitel* factors . . . are often analyzed together." (citation omitted)). As explained below,

this Court finds that the second and third *Eitel* factors are satisfied with respect to Plaintiff's

claims for breach of contract and for account stated, and under the Oregon Uniform Fraudulent

Transfer Act. Plaintiff's unjust enrichment claim and claim under the South Carolina Uniform

Limited Liability Company Act do not satisfy these *Eitel* factors. However, given the root of

Plaintiff's harm sounds in contract, on balance, these factors weigh toward granting the motion.

Plaintiff's first claim for relief is breach of contract. ECF 1 at ¶¶ 70–75. Under Oregon

law, "plaintiffs must allege (1) the existence of a contract, (2) the relevant terms of the contract,

(3) plaintiffs' full performance and lack of breach, and (4) defendant's breach resulting in

damage to plaintiffs." *Olmstead v. ReconTrust Co., N.A.*, 852 F. Supp. 2d 1318, 1322 (D. Or.

2012) (citation omitted). Plaintiff has sufficiently alleged these elements. ECF 1 at ¶¶ 10, 11–18,

23–26, 35–69.

Plaintiff's second claim for relief is account stated. ECF 1 at ¶¶ 76–80. "The crux of an

account stated is an agreement between the parties that a certain amount is owing and will be

paid." *Sunshine Dairy v. Jolly Joan*, 380 P.2d 637, 638 (Or. 1963). "An account stated may be

created by failure to object to a billing within a reasonable time. The thrust of this theory is that

an agreement may be inferred from the failure of a debtor to object to an accounting he receives

from a creditor." *Tri-Cty. Ins., Inc. v. Marsh*, 608 P.2d 190, 192 (Or. Ct. App. 1980) (internal

citations omitted). Here, Plaintiff has satisfied these *Eitel* factors by sufficiently pleading a claim

for account stated: alleging that CNS was invoiced monthly and never objected to the invoices,

CNS acknowledged an outstanding balance of over $2 million in September 2019, and CNS

repeatedly acknowledged its outstanding balances by promising to pay and making partial payments. *See* ECF 1 at ¶¶ 37, 39–55, 76–80; ECF 18-1, Ex. 4 (invoices); ECF 1-4, Ex. D (acknowledging outstanding balance as of August 17, 2019).

Plaintiff's third claim for relief is unjust enrichment. ECF 1 at ¶¶ 81–84. Because Plaintiff fails to state a claim for unjust enrichment, Plaintiff fails to satisfy the second and third *Eitel* factors with respect to this claim. Following the Oregon Supreme Court's decision in *Larisa's Home Care, LLC v. Nichols-Shields*, courts considering unjust enrichment claims should "examine the established legal categories of unjust enrichment" rather than apply a formulaic standard. 404 P.3d 912, 921 (Or. 2017); *see also LRY, LLC v. Lake Cty.*, No. 1:17-cv-00675-MC, 2018 WL 5300387, at *5 (D. Or. Oct. 25, 2018) (noting the "law of unjust enrichment is undergoing a period of rapid expansion in Oregon" and explaining the "established legal categories" include "Oregon's own case law, . . . the *Restatement (Third) of Restitution and Unjust Enrichment* (2011) [and] appellate decisions from other states").

Plaintiff argues that "CNS has been unjustly enriched . . . by using Allstream's services without paying for them, and the interests of justice would be served by requiring CNS to fulfill its promises to pay." ECF 1 at ¶ 84. However, "[t]he fact that a recipient has obtained a benefit without paying for it does not of itself establish that the recipient has been unjustly enriched." *Restatement (Third) of Restitution and Unjust Enrichment* § 2(1) (Am. L. Inst. 2011); *see also id.* at § 44 cmt. a ("Given the principles and definitions of this Restatement, neither performance nor breach of a valid, enforceable contractual obligation can be a source of unjust enrichment (subject to the limited exception recognized in § 39).")[4]; *Walters v. Vitamin Shoppe Indus., Inc.*,

---

[4] Section 39 provides for restitution in the event of opportunistic breach. However, "[i]f the promisee's contractual entitlement is adequately protected by a judgment for money damages, there is no claim to restitution by the rule of this section." *Id.* at § 39, cmt. c. Such is the case

701 F. App'x 667, 669 (9th Cir. 2017) ("Under Oregon law, once a court determines that a valid contract exists, an unjust enrichment claim must fail.").

Not only has the Court determined a contract exists between parties, *see infra*, the Complaint does not establish that CNS's conduct falls into one of the "established legal categories of unjust enrichment." *Larisa's Home Care*, 404 P.3d at 921 (rejecting the formula set forth in *Jaqua v. Nike, Inc.*, 865 P.2d 442 (Or. Ct. App. 1993) in favor of this approach). Rather, Plaintiff appears to have pleaded unjust enrichment under the jettisoned *Jaqua* formula. *See Jaqua*, 865 P.2d at 445 (defining the elements as "a benefit conferred, awareness by the recipient that a benefit has been received and, under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it"). Accordingly, Plaintiff has not sufficiently stated a claim for relief for which it can recover under a theory of unjust enrichment.

The fourth claim is under the South Carolina Uniform Limited Liability Company Act. ECF 1 at ¶¶ 85–90. Section 33-44-406 of that act "provides that a limited liability company cannot make a distribution to its members if it is unable to pay its ongoing operating expenses or if its assets are less than its liabilities." *In re JK Harris & Co., LLC*, 512 B.R. 562, 567–68 (Bankr. D.S.C. 2012); *see also* S.C. Code Ann. § 33-44-406(a). Section 33-44-407 "creates liability for anyone that authorizes a member distribution while a company is insolvent, in breach of his or her fiduciary duties." *In re JK Harris & Co*., 512 B.R. at 568; *see also* S.C. Code Ann. § 33-44-407. This section, however, states that the member is "personally liable *to the company*." S.C. Code Ann. § 33-44-407(a) (emphasis added). The South Carolina Supreme Court has not

---

here. The Restatement also provides for recission for material breach of contract, but this remedy is "not available against a defendant whose defaulted obligation is exclusively an obligation to pay money," as is the case here. *Id*. at § 37(2).

ruled on whether a third party that is not seeking to vindicate the company's interests has

standing to assert such a claim, and lower courts do not appear to have considered such a claim.

*See Herman v. Miller*, No. 2:18-CV-1509-BHH, 2019 WL 4643573, at *8 (D.S.C. Sept. 24,

2019) (noting a lack of controlling law and declining to predict how the state Supreme Court

would rule); *see also In re Derivium Cap., LLC*, 380 B.R. 407, 415 (Bankr. D.S.C. 2006)

(explaining that "§ 33-44-407(b) provides [the LLC] with a right of action against any of its

members who receive distributions of corporate property in violation of applicable law"); *In re

JK Harris & Co.*, 512 B.R. at 567–68 (finding § 33-44-407 liability on a motion by LLC's

Chapter 7 trustee). At this juncture, the Court declines to predict how the South Carolina Court

would rule on this issue, but it notes that Plaintiff does not appear to be asserting a claim on

behalf of CNS and therefore it is likely that Plaintiff lacks standing to assert this claim.

Plaintiff's fifth claim for relief is pursuant to the Oregon Uniform Fraudulent Transfer

Act ("OUFTA"), O.R.S. §§ 95.200–.310, et seq. ECF 1 at ¶¶ 91–94. This statute provides that:

> A transfer made by a debtor is fraudulent as to a creditor whose
> claim arose before the transfer was made if the transfer was made
> to an insider for other than a present, reasonably equivalent value,
> the debtor was insolvent at that time and the insider had reasonable
> cause to believe that the debtor was insolvent.

O.R.S. § 95.240(2); *see also Jakobitz v. Iron Horse Bus. Servs., LLC*, 145 P.3d 277, 281 (Or. Ct.

App. 2006) ("The statute, thus, permits a creditor to collect a debt when the debtor has tried to

strip itself of assets that the creditor could have applied for that purpose."). "A debtor who is

generally not paying debts of the debtor as they become due is presumed to be insolvent." O.R.S.

§ 95.210(2). An "insider" includes a "director," "officer," or person "in control" of the debtor.

*Id.* at § 95.200(7). "Transfer" is defined broadly to encompass "every mode, direct or indirect,

absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an

interest in an asset, and includes a payment of money . . . ." *Id.* at § 95.200(12). In this case,

PAGE 13 – OPINION AND ORDER

Plaintiff has sufficiently alleged that: (1) Mostrom was an insider of CNS, *see* ECF 1 at ¶¶ 3, 11; (2) CNS made a transfer to Mostrom, *see id.* at ¶ 93; *see also* ECF 16 at 33; (3) CNS was insolvent at that time, *see, e.g.*, ECF 1 at ¶¶ 39–56; (4) Mostrom had reasonable cause to believe CNS was insolvent, *see id.*; and (5) the transfer was made for other than a present, reasonably equivalent value, *see* ECF 16 at 33.

Accordingly, this Court finds that the second and third *Eitel* factors are satisfied with respect to Plaintiff's claims for breach of contract, for account stated, and under the OUFTA. However, Plaintiff has failed to state a claim for unjust enrichment and under the South Carolina Uniform Limited Liability Company Act, and thus fails to satisfy these *Eitel* factors on those claims. On balance, however, the second and third *Eitel* factors weigh in favor of granting Plaintiff's motion because Plaintiff has sufficiently stated a claim for breach of contract, which accounts for the thrust of Plaintiff's allegations against and damages sought from Defendants, as well as for account stated and under the OUTFA.

### c. Factor 4: Sum of Money at Stake

The court must "consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "[A] large sum of money at stake would disfavor default judgment." *J & J Sports Prods., Inc. v. Cardoze*, No. C 09-05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) (citing *Eitel*, 782 F.2d at 1472); *see also Eitel*, 782 F.2d at 1472 (noting $3 million sought in damages as factor weighing against granting default judgment).

Though large sums are disfavored, they are not dispositive. Courts have granted default judgment when plaintiffs "provided detailed and unrebutted documentation in support of their motion" because "it is well settled that a defendant should not be allowed to evade judgment as a result of failing to appear." *Emerging Acquisitions, LLC v. Oracle Installations & Fabricators,*

*LLC*, No. 6:20-cv-00453-MK, 2021 WL 325711, at *2 (D. Or. Feb. 1, 2021) (citation and quotation marks omitted); *see also Swift Fin., LLC v. Alabar Constr., Inc.*, No. 2:18-cv-02009-SU, 2019 WL 654343, at *3 (D. Or. Jan. 30, 2019), *report and recommendation adopted*, No. 2:18-cv-02009-SU, 2019 WL 653801 (D. Or. Feb. 15, 2019) (noting "substantial sum," but granting default judgement where "plaintiff has presented uncontested evidence" of amount owed).

In the instant case, the substantial sum requested—over $13 million—does weigh against granting default judgment. However, Plaintiff has presented "uncontested evidence" of the amounts, both as to the unpaid invoices and the contractual termination fee provision, which stem from Defendants' breach. *See Swift Fin., LLC*, 2019 WL 654343, at *3; *see also Red Lion Hotels Franchising, Inc. v. Dumon*, No. 2:20-CV-0183-TOR, 2021 WL 1269120, at *3 (E.D. Wash. Apr. 6, 2021) ("While a large sum of money weighs in favor of a decision on the merits, the amount directly relates to and flows from the Defendant's breach of [contract] with no contradictory evidence.").

### d.  Factor 5: Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers whether a dispute of material facts is likely. "'Where the [p]laintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is very low.'" *3M Co. v. Phx. Auto. Refinishing Co., Ltd.*, CV 17-00649-RSWL-DTB, 2018 WL 1989536, at *5 (C.D. Cal. Apr. 25, 2018) (quoting *Warner Bros. Home Ent., Inc. v. Slaughter*, No. CV 13–0892–DOC RNB(x), 2013 WL 5890682, at *3 (C.D. Cal. Oct. 30, 2013)) (alteration in original). As explained above, Plaintiff's complaint is well-pleaded. Defendants have made no effort to respond. *See* ECF 16 at 13. This factor therefore weighs in favor of default judgment.

### e. Factor 6: Whether Default was Due to Excusable Neglect

This factor considers whether the defendant's default was due to excusable neglect. Because Defendants were properly served by office service under Oregon law in January 2021, ECF 11; ECF 12, and were served with Plaintiff's instant motion for default judgment, ECF 19, this factor favors default judgment. *See Nat'l Photo Grp., LLC v. Pier Corp.*, No. SACV 13–1165–DOC, 2014 WL 12576641, at *3 (C.D. Cal. Mar. 10, 2014); *3M Co.*, 2018 WL 1989536, at *5.

### f. Factor 7: Strong Policy Preference for Decisions on the Merits

The seventh *Eitel* factor considers the strong policy preference in favor of decisions on the merits. However, "[w]here the [d]efendant's failure to appear makes decision on the merits impossible, default judgment is appropriate." *Warner Bros.*, 2013 WL 5890682, at *4 (citing *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010)); *see also 3M Co.*, 2018 WL 1989536, at *5. Such is the case here.

### 2. Terms of the Judgment to be Entered

"After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered." *Machuca*, 2014 WL 1330658, at *6. "[A] plaintiff is required to prove the amount of his damages, because neither the default nor the allegations in the complaint can establish the amount of damages." *Lasheen v. Embassy of The Arab Republic of Egypt*, 625 F. App'x 338, 341 (9th Cir. 2015). As stated above, Plaintiff requests a judgment of $13,717,047.41. This Court recommends judgment in the full amount requested.

Plaintiff first requests $4,130,737.41 in unpaid balances. Plaintiff has submitted a declaration, ECF 18, Causey Decl., as well as exhibits, including invoices and payment records, ECF 18-1, Exs. 4–5. The final invoice prior to the contract's termination on January 21, 2020

PAGE 16 – OPINION AND ORDER

indicates an outstanding balance of $4,130,737.41. ECF 18-1, Ex. 4, at 40–42 (noting "total amount due" of $4,130,737.41 as of December 27, 2019). *Compare* ECF 18-1, Ex 4, *with* ECF 18-1, Ex. 5 (subtracting total payments made from total amounts billed yields same amount outstanding). Based on its review of the declarations and exhibits submitted by Plaintiff, the Court concludes that Plaintiff is entitled to $4,130,737.41, representing the unpaid balance, from Defendant CNS. In addition, Plaintiff is entitled to the requested costs of $1,310. Plaintiff provided an affidavit and invoices demonstrating the $1,310 in costs related to serving Defendants. *See* ECF 13, First de Sam Lazaro Decl., at ¶ 30; ECF 13, Ex. 7.

Plaintiff also requests $9,585,000 in early termination fees as liquidated damages. In the instant motion, Plaintiff has calculated this sum by multiplying monthly minimum charge ($150,000) by the number of months remaining on the contract from the date of termination (63.9 months), pursuant to § 2.3 of the 2018 Contract. *See* ECF 16 at 18 & n.4.

Here, the Court agrees the provision is a liquidated damages provision because it sets "the amount of damages to be recovered by one party from another in case of the latter's failure to perform as agreed." *DiTommaso Realty, Inc. v. Moak Motorcycles, Inc.*, 785 P.2d 343, 345 (Or. 1990) (en banc) (quotation marks omitted) (quoting *Illingworth v. Bushong*, 688 P.2d 379, 383 (Or. 1984) (en banc)). "[T]he 'initial point of departure' for analyzing the validity of a liquidated damages provision is ORS 72.7180(1)." *Kesterson v. Juhl*, 970 P.2d 681, 683 (Or. Ct. App. 1998) (quoting *Illingworth*, 688 P.2d at 390). O.R.S. § 72.7180(1) provides that:

> Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

O.R.S. § 72.7180; *see also Greenbrier Leasing Corp. v. Intermountain Commodities Co.*, No. CV-04-1266-ST, 2005 WL 1334360, at *8 (D. Or. June 3, 2005) (explaining that "[a]greed upon damages are reasonable where congruent with the actual harm suffered by the non-breaching party" but "[a]n unreasonably large agreed upon amount of damages is unenforceable").

In this case, the Court finds there are "difficulties of proof of loss" and "inconvenience or nonfeasibility" of an adequate remedy for breach given the length of the contract term, the unpredictable monthly invoice amounts, and varying costs to provide services. *See* ECF 16 at 17–18; *see also Zidell, Inc. v. Pac. N. Marine Corp.*, 744 F. Supp. 982, 987 (D. Or. 1990) (noting "any harm caused by the breach would have been difficult to estimate with any accuracy" given eight-year contract term). Additionally, while the amount sought in liquidated damages is large, it is reasonable: $150,000 represents the minimum monthly payment Allstream could expect from CNS and the total amount is tied to the remaining term of the contract. *See* ECF 16 at 18; *see also Moorefield Constr., Inc. v. Bastion Sec., Inc.*, No. SACV 19-00757 JVS(ASx), 2020 WL 999834, at *8 (C.D. Cal. Jan. 7, 2020) (applying Oregon law and explaining "a liquidated damages provision . . . that decreases as the term progresses weighs in favor of the provision being valid and not a penalty"). Therefore, having found the provision is enforceable, this Court concludes that Plaintiff is entitled to $9,585,000 in early termination fees, resulting in a total judgment of $13,717,047.41.

## C. Eric Mostrom

Plaintiff next requests that this Court "pierce CNS's corporate veil and enter default judgment against Mostrom." ECF 16 at 2. Having found Plaintiff is entitled to default judgment against CNS, the Court now considers whether it should pierce CNS's corporate veil and hold Mostrom personally liable for CNS's liabilities under the asserted claims.

Under Oregon law, to pierce the corporate veil, "the plaintiff must prove that (1) the defendant controlled the debtor corporation; (2) the defendant engaged in 'improper conduct'; and (3) as a result of that 'improper conduct,' plaintiff either entered into a transaction that it otherwise would not have entered into or plaintiff was unable to collect on a debt against the insolvent corporation." *Oregon Pub. Emps.' Ret. Bd. ex rel. Oregon Pub. Emps.' Ret. Fund v. Simat, Helliesen & Eichner*, 83 P.3d 350, 362 (Or. Ct. App. 2004); *see also Amfac Foods, Inc. v. Int'l Sys. & Controls Corp.*, 654 P.2d 1092, 1100–02 (Or. 1982) (en banc). "In Oregon, the doctrine of corporate veil piercing applies to LLCs in the same way that it does to corporations." *Sterling Sav. Bank ex rel. Nw. Lending Partners, LLC v. Emerald Dev. Co*, 338 P.3d 719, 735 (Or. Ct. App. 2014) (en banc).

"[L]iability can be imposed only in circumstances where 'the debtor corporation was under the *actual control* of the shareholder.'" *Oregon Pub. Emps.' Ret. Bd.*, 83 P.3d at 363 (quoting *Amfac,* 654 P.2d at 1101)) (emphasis in original). The Court concludes that Plaintiff has shown CNS was under Mostrom's actual control. Mostrom "held a significant interest" in CNS and was "ultimately responsible for [its] financial decision making." *Oregon Pub. Emps.' Ret. Bd.*, 83 P.3d at 363 (precluding a finding of control where these factors were lacking); *see also Salem Tent & Awning Co. v. Schmidt*, 719 P.2d 899, 903 (Or. Ct. App. 1986); *BLD Prod., LTC. v. Tech. Plastics of Oregon, LLC*, No. 05-556-KI, 2006 WL 3628062, at *5 (D. Or. Dec. 11, 2006). Mostrom is the sole member, President, and CEO of CNS, ECF 1 at ¶¶ 3, 11; he appeared to direct communications and decisions regarding the Allstream contract and control the day-to-day operations of CNS, *id*. at ¶¶ 40–55, 60–64.

The focus of the "improper conduct" inquiry is "moral culpability," or "dishonest or deceitful conduct intended to harm a third party, whether or not that conduct violates a statute or

other legal obligation." *State ex rel. Neidig v. Superior Nat. Ins. Co.*, 173 P.3d 123, 138–39, 141–42 (Or. 2007) (en banc) (finding failure to file forms and make required deposits was improper conduct when undertaken to evade government regulation and deceive); *see also Gemignani v. Pete*, 71 P.3d 87, 92 (Or. Ct. App. 2003) (affirming finding of improper conduct "by obligating the corporation to repay loans that it could not possibly pay because of its undercapitalization or insolvency"); *Amfac Foods, Inc.*, 654 P.2d 1102–03 (providing examples of improper conduct including inadequate capitalization; milking; misrepresentation, commingling and holding out; and violation of statute). Specifically, Plaintiff has alleged that: Mostrom received distributions from CNS in violation of state law; he repeatedly obligated CNS to incur debts to Allstream with no intent to repay; he submitted inaccurate and misleading traffic pattern data; and he provided false information to Allstream regarding CNS's federal tax liability. ECF 1 at ¶ 96. The Court finds this conduct to be improper. Plaintiff's evidence submitted in support of the motion for default judgment provides further support for a finding of improper conduct. *See, e.g.*, ECF 18, Causey Decl., at ¶¶ 4–5, 20–33 (showing traffic pattern data issues and repeated incurrence of debt).

Finally, Plaintiff must establish a causal relationship between the misconduct and the injury. This may be established, for example, by showing that as a result of the improper conduct, "[P]laintiff was unable to collect its debt." *Salem Tent*, 719 P.2d at 903. Plaintiff has demonstrated that Mostrom made repeated, specific promises to pay Allstream, but failed to pay. *See, e.g.*, ECF 1 at ¶¶ 41–55; ECF 18, Causey Decl., at ¶¶ 20–33; *see also* O.R.S. § 95.210(2) ("A debtor who is generally not paying debts of the debtor as they become due is presumed to be insolvent."). Additionally, Plaintiff has submitted evidence in support of the motion for default judgment indicating that had CNS provided Plaintiff with accurate traffic pattern data, Plaintiff

would not have agreed to the terms of the 2018 Contract. *See, e.g.,* ECF 18, Causey Decl., at ¶ 8. Finally, the evidence submitted in support of the motion demonstrates that Mostrom has sought to evade payment following termination of the contract. *See id.* at ¶ 35 (explaining that "after Allstream terminated the 2018 Contract, Mostrom disappeared and stopped responding" and Allstream had to use an investigator to try to locate him); *see generally* ECF 17, Second de Sam Lazaro Decl. (explaining difficulties locating Mostrom and various telecommunications companies associated with him).

Accordingly, the Court finds that Plaintiff is entitled to pierce the corporate veil of CNS and hold Mostrom personally liable for the damages arising out of CNS's breach of contract.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Default Judgment, ECF 16, against CNS in the amount of $13,717,047.41, inclusive of $4,130,737.41 and $9,585,000 in damages for unpaid balances and early termination, respectively, and $1,310 in costs. The Court ORDERS that CNS pay Plaintiff $13,717,047.41. Further, Plaintiff may pierce the corporate veil of CNS and hold Mostrom personally liable for the liability of CNS in this action.


**IT IS SO ORDERED**.

DATED this 9th day of August, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge